(July 5, 1923.)

## EMANUEL RADKE et al., Respondents, and KATHRYN ELLIOTT et al., Intervenors, Appellants, v. LIBERTY INSURANCE COMPANY et al., Respondents.

[216 Pac. 1040.]

PLEDGE — POSSESSION — NON-NEGOTIABLE INSTRUMENT — INDORSEMENT —C. S., SEC. 6063—CONFLICTING EQUITIES.

1. The lien of a pledge is dependent on possession, and no pledge is valid until the property pledged is delivered to the pledgee, or to a pledge-holder as prescribed by the statute.

2. C. S., sec. 6063, applies only to non-negotiable written contracts which are transferred for value and not to those deposited as collateral security.

3. As between conflicting equities that which is prior in time prevails.

APPEAL from the District Court of the Fifth Judicial District, for Bannock County. Hon. Robert M. Terrell, Judge.

Petition in intervention for rescission of contract and return of consideration paid on ground of fraud. Judgment for another intervening claimant. *Reversed.*

L. Ivan Jensen and John W. Jones, for Appellants.

"Mere indorsement does not operate to transfer or assign a non-negotiable instrument, nor does the title to such instrument, thus indorsed, pass by mere delivery." (*Chicago Trust & Sav. Bank v. Chicago Title & Trust Co.,* 190 Ill. 404, 83 Am. St. 138, 60 N. E. 586; *White v. City of Brooklyn,* 122 N. Y. 53, 25 N. E. 243.)

"Mere indorsement on a non-negotiable instrument is not sufficient as an assignment, in the absence of statutory authority." (*Larson v. Glos,* 235 Ill. 584, 85 N. E. 926.)

The only non-negotiable instrument which in Idaho can be transferred by indorsements is "A non-negotiable written contract for the payment of money or personal property." (C. S., sec. 6063; *Murphy v. Bartsch,* 2 Ida. 636, 23 Pac. 82.)

This paper consisting of Liberty bonds deposited in the Commercial Bank is capable of convenient manual delivery, and consequently cannot be transferred by a transfer of a receipt issued therefor by a depositary, for there can be no constructive or symbolical delivery such as usage and custom give to property represented by a bill of lading or a warehouse receipt. (Jones on Collateral Securities, sec. 229.)

J. M. Stevens and D. D. Mote, for Respondents.

The First National Bank of Pocatello, Idaho, claims the bonds in question upon the theory that having taken the receipts for the bonds in question, without notice of any defect, and without notice of any alleged fraud or misrepresentation, as collateral security for money loaned, and having demanded that security before any action was instituted, the banks holding these bonds became trustees for the respondent herein, and respondent's claim to these bonds is superior to any claim of any stockholders in the Liberty Insurance Company.

The respondent attempted to reduce this security to its actual possession, and had it not been for the wrongful act of the banks herein the same would have been received. The intervenors were responsible for the refusal of the banks to deliver the bonds. (*Babcock v. Edson,* 82 Misc. Rep. 144, 143 N. Y. Supp. 399; *Beiser v. Western German Bank,* 167 Fed. 486; *Grand Ave. Bank v. St. Louis etc. Trust Co.,* 135 Mo. App. 366, 115 S. W. 1071; *Ladd v. Myers,* 4 Cal. App. 352, 87 Pac. 1110; *Yokohama Specie Bank v. Trans-Oceanic Co.,* 54 Cal. App. 533, 202 Pac. 346.)

Can intervenors and appellants now come into court and say that because of their own act in defeating the change of possession they are entitled to proceed under a rule where change of possession has not been had? (*Security Warehouse Co. v. Hand,* 206 U. S. 415, 11 Ann. Cas. 789, 27 Sup. Ct. 720, 51 L. ed. 117.)

W. C. Loofbourrow, for Plaintiffs and Intervenors.

McCARTHY, J.—Respondents Radke et al. commenced an action against respondent Liberty Insurance Company for the appointment of a receiver to take charge of all its assets. Appellants Kathryn Elliott et al. filed a complaint in intervention alleging that certain Liberty bonds were among the assets of the respondent Liberty Insurance Co.; that said company through its authorized agents sold shares of its capital stock to intervenors; that said agents in making such sales falsely and fraudulently represented to intervenors that said company had fully complied with all the laws of the state of Idaho relative to insurance and investment companies, was duly licensed to sell its capital stock and transact business as an insurance company in Idaho, and had theretofore sold approximately $200,000 of its capital stock; that all of said statements were false and known to be by said agent and by the company at the time they were made; that said statements were made for the purpose of defrauding intervenors and inducing them to enter into a contract for the purchase of said shares of stock, and that said intervenors believed and relied on them and by reason thereof purchased the stock and paid for the same; that in payment for said stock intervenors paid certain amounts in cash, and the balance in Liberty bonds; that said Liberty bonds were deposited by respondent company in the Commercial Bank at Shelley, Idaho, and were held by said bank for said company. Intervenors alleged that they discovered the falsity of the representations about December 9, 1918, and the action was started on January 3, 1919. They elect to rescind the sales, tender back the certificates of stock, and seek to recover from the company the cash paid by them and the Liberty bonds delivered by them. A receiver was appointed. The First National Bank of Pocatello, a banking corporation, filed a petition in intervention alleging that it owned and held certain promissory notes executed and delivered to it for value received by Beauchamp, Moog & Beauchamp, a corporation, and L. F. Tucker; that respondent Liberty Insurance Co., upon depositing the Liberty

bonds in question in the Commercial Bank at Shelley, received from it receipts showing that they were held in trust subject to its orders, that thereafter it duly indorsed and delivered said receipts to Beauchamp, Moog & Beauchamp, and Tucker, who in turn indorsed the same to the Pocatello bank to secure said notes. The petition further alleges that demand has been made on the Commercial Bank of Shelley that it deliver said Liberty bonds to petitioner; that said demand has not been complied with. Petitioner asks the court to order the Liberty bonds mentioned in the receipts delivered to it. The case being tried by the district court, it found that representations were made to intervenors by the duly authorized agents of respondent Liberty Insurance Co. as alleged in their complaint in intervention; that they were false and known to be false by the company and its agents; that they were made for the purpose of inducing intervenors to purchase and pay for stock of the company; that intervenors relied upon these representations and so relying paid their money and delivered their Liberty bonds; that intervenors did not discover the fraud until December 9, 1918. It further found that the loans were made by the Pocatello bank as set forth in its petition in intervention, and the receipts for the Liberty bonds were delivered to it as security as alleged. It further found that the Pocatello bank made demand upon the Shelley bank to deliver the bonds to it; that the receipts were indorsed to the Pocatello bank as security, and the Pocatello bank made demand upon the Shelley bank to deliver the Liberty bonds, prior to the bringing of this action and the appointment of the receiver. The court concluded that the refusal of the Shelley bank to deliver the bonds constituted it a pledgeholder or trustee of pledged property for the benefit of the Pocatello bank, and ordered and decreed that the receiver of the respondent Liberty Insurance Company, who had obtained possession of the Liberty bonds, should surrender them to the Pocatello bank. From this decree intervenors Kathryn Elliott et al. appealed, their principal specification of error being that the court erred in ordering and decree-

ing that said Liberty bonds should be delivered to the Pocatello bank.

The transaction between the Pocatello bank on the one hand, and Beauchamp, Moog and Beauchamp and Tucker on the other hand, did not constitute a pledge of the Liberty bonds. The lien of a pledge is dependent upon possession, and no pledge is valid until the property pledged is delivered to the pledgee, or to a pledge-holder as prescribed by the statute. (C. S., sec. 6389.) There was no such delivery. (*Grand Ave. Bank v. St. Louis etc. Co.,* 135 Mo. App. 366, 115 S. W. 1071.) Respondent First National Bank of Pocatello contends that the transaction should be viewed as if there had been a delivery, because the refusal of the Shelley bank to deliver was wrongful. This argument might be sound if the controversy were principally between the Liberty Insurance Co. and its assignees and the Pocatello bank. It is not sound as against intervenors Elliott et al., the defrauded parties. They are as innocent of any wrongdoing as the Pocatello bank and, in order for a pledge to be valid as against them, it must be in substantial compliance with the statute.

The receipts given by the Shelley bank for the Liberty bonds are in the following form:

"Depositary Bank's Receipt of Deposit of Guaranteed Interest-Bearing and Approved United States Liberty Bonds and Securities.

"To comply with the insurance laws of the State of Idaho.

"Received of Liberty Insurance Company, an Idaho corporation, this —— day of ——, 19—, the following securities: ———— to remain with the undersigned in trust for and subject to the order of the Liberty Insurance Company.

"Name of Bank————————.

"Signed by ————————,

"Cashier."

These are not negotiable instruments. (C. S., sec. 5868.) Non-negotiable securities are always subject in the hands of a pledgee to existing equities. (*Kentucky Nat. Bank v. Martin* (Ky.), 24 S. W. 1067; Jones on Collateral Securities

and Pledges, sec. 134.) The indorsement of the receipt did not pass title to the bonds. (*Chicago Trust & Savings Bank v. Chicago Title & Trust Co.,* 190 Ill. 404, 83 Am. St. 138, 60 N. E. 586; *White v. City of Brooklyn,* 122 N. Y. 53, 25 N. E. 243; *Grand Ave. Bank v. St. Louis etc. Co., supra.*)

The Pocatello bank relies on C. S., sec. 6063, which reads as follows:

"§ 6063. A non-negotiable written contract for the payment of money or personal property may be transferred by indorsement, in like manner with negotiable instruments. Such indorsement transfers all the rights of the assignor under the instrument to the assignee, subject to all equities and defenses existing in favor of the maker at the time of the indorsement."

We do not regard the receipt as a written contract for the payment of money or personal property within the meaning of the statute. Moreover the statute refers only to written evidences of debt sold and transferred for value, and not to those deposited as collateral security. (*Murphy v. Bartsch,* 2 Ida. 636, 23 Pac. 82.) Moreover, it expressly recognizes all existing equities and defenses.

It follows that the Pocatello bank did not have a valid pledge of the Liberty bonds, and did not have title to them. The equity of appellants Kathryn Elliott et al. is prior to that of the Pocatello bank and should prevail. The order and decree appealed from are reversed, and the cause remanded to the district court with instructions to enter a decree that the Liberty bonds in question be turned over to the several intervenors by whom they were delivered to respondent Insurance company. Costs to intervenors Elliott et al.

Dunn and Wm. E. Lee, JJ., concur.